TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

SHANNON BOYLAN (D.C. Bar No. 1724269)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
202-598-9584 (phone)
202-305-0506 (fax)
shannon.boylan@usdoj.gov

*Attorneys for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, | ) |
| Plaintiff, | ) Case No. 3:21-cv-00158-HRH |
| v. | ) |
| | ) **FEDERAL DEFENDANTS'** |
| | ) **REPLY IN SUPPORT** |
| DEB HAALAND, *et al.*, | ) **OF ITS MOTION TO DISMISS** |
| | ) |
| Federal Defendants. | ) |
| | ) |

# TABLE OF CONTENTS

I.  The extensions of the opening order for PLO No. 7899 were not *ultra vires* because FLPMA § 204(a) does not apply to the Department's actions in this case ................................................................................................................ 2

II. FLPMA and ANILCA procedures for withdrawing more than 5,000 acres of land do not apply to the Department's actions in this case ..................................... 6

III. The publication of PLO Nos. 7900-7903 is not a ministerial action........................ 9

IV. Claims 1-3 and 6-10 challenge non-final agency actions and are not ripe for review ................................................................................................................ 10

V.  The State's seventh cause of action fails to state a claim upon which relief can be granted........................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Acura of Bellevue v. Reich,*
   90 F.3d 1403 (9th Cir.1996) ........................................................................ 17

*Bakersfield City School Dist. v. Boyer,*
   610 F.2d 621 (9th Cir.1979) ........................................................................ 11

*Bennett v. Spear,*
   520 U.S. 154 (1997) ..................................................................................... 11

*Boesche v. Udall,*
   373 U.S. 472 (1963) .................................................................................. 8, 17

*Chen v. I.N.S.,*
   95 F.3d 801 (9th Cir. 1996) .......................................................................... 6

*Comanche Nation, Okla. v. United States,*
   393 F. Supp. 2d 1196 (W.D. Okla. 2005) ................................................. 9, 10

*Ctr. for Envtl. Health v. Wheeler,*
   429 F. Supp. 3d 702 (N.D. Cal. 2019) ....................................................... 12

*DRG Funding Corp. v. Sec'y of Housing and Urban Dev.,*
   76 F.3d 1212 (D.C. Cir. 1996) .................................................................... 11

*Fairbanks N. Star Borough v. U.S. Army Corps of Engineers,*
   543 F.3d 586 (9th Cir. 2008) ...................................................................... 11

*Humane Soc'y of the U.S. v. U.S. Dep't of Agric.,*
   474 F. Supp. 3d 320 (D.D.C. 2020) .............................................................. 6

*Ideal Basic Indus., Inc. v. Morton,*
   542 F.2d 1364 (9th Cir. 1976) ...................................................................... 8

*In re A Cmty. Voice,*
   878 F.3d 779 (9th Cir. 2017) ...................................................................... 10

*Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior,*
   88 F.3d 1191 (D.C. Cir. 1996) ...................................................................... 6

*Nat'l Park Hosp. Ass'n v. Dep't the of Interior,*
   538 U.S. 803 (2003) ..................................................................................... 14

*New Mexico v. Watkins,*
   969 F.2d 1122 (D.C. Cir. 1992) .................................................................... 4

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
   523 U.S. 726 (1998) ..................................................................................... 13

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .......................................................................... 15

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir.2003) ........................................................................... 15

*Sierra Club v. U.S. Nuclear Regulatory Comm'n*,
    825 F.2d 1356 (9th Cir. 1987) .......................................................................... 11

*Sierra Club v. Van Antwerp*,
    719 F. Supp. 2d 77 (D.D.C. 2010) .................................................................... 17

*Timken Co. v. U.S.*,
    715 F. Supp. 373 (Ct. Int'l Trade 1989) ............................................................. 9

*West v. Standard Oil Co.*,
    278 U.S. 200 (1929) ........................................................................................... 8

**Statutes**

25 U.S.C. § 2710(d)(8)(D) ....................................................................................... 9

43 U.S.C. § 1714(a) ................................................................................................... 2

43 U.S.C. § 1714(i) ................................................................................................. 16

5 U.S.C. § 704 ......................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

**Regulations**

43 C.F.R. § 2091.6 ...................................................................................... 3, 4, 5, 7, 10

43 C.F.R. §§ 2300-2310 ........................................................................................... 8

43 CFR § 2300.0-5(o) .............................................................................................. 4

**Other Authorities**

86 Fed. Reg. 10,131-02 (Feb. 18, 2021) ................................................................. 3

86 Fed. Reg. 20,193-01 (Apr. 16, 2021) ........................................................... 3, 12

86 Fed. Reg. 5236-01 (Jan. 19, 2021) ..................................................................... 3

Plaintiff State of Alaska (the "State" or "Alaska") filed this action on July 7, 2021. Compl., ECF No. 1. It alleges that the U.S. Department of the Interior (the "Department" or "Interior") and the Bureau of Land Management ("BLM") harmed the State by deferring for two years a handful of January 2021 Public Land Orders ("PLOs") that would revoke withdrawals collectively affecting approximately 28 million acres of federal land in Alaska. Specifically, the Department deferred the opening order for Public Land Order No. 7899, and deferred the publication of PLO Nos. 7900, 7901, 7902, and 7903. The Department determined that deferral was necessary after identifying procedural and legal defects in the decision-making processes leading to the January 2021 PLOs.

The State's theories for forcing the Department to immediately revoke the withdrawals on these lands rely on fundamental misinterpretations of the law. The Department is under no legal duty to revoke the withdrawals or open the lands, much less on the State's preferred timeline. And the State's argument that the Department lacks authority to defer these PLOs has no basis in law. Taken together, the State's ten causes of action fail to state a claim upon which relief can be granted, fail to challenge a final agency action, or are not ripe for review. Accordingly, under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Department respectfully requests that the Court dismiss the Complaint in its entirety and allow the Department to complete its work to ensure that any decisions to revoke these withdrawals are made lawfully.

# I. The extensions of the opening order for PLO No. 7899 were not *ultra vires* because FLPMA § 204(a) does not apply to the Department's actions in this case.

The State's allegation that Principal Deputy Assistant Secretary for Land and Minerals Management Laura Daniel-Davis acted *ultra vires* in deferring the opening order of PLO No. 7899 misconstrues the Federal Land and Policy Management Act ("FLPMA") § 204(a), which does not apply to this action. As explained in Defendants' Motion to Dismiss, Section IV.A, incorporated by reference here, Ms. Daniel-Davis did not "make, modify, extend, or revoke" a withdrawal when she issued notices in the Federal Register deferring the effective date of PLO No. 7899. Thus, these actions do not implicate FLPMA § 204(a).

Section 204(a) of FLPMA confers on the Secretary the power "to make, modify, extend, or revoke withdrawals," but specifies that the Secretary "may delegate this withdrawal authority only to individuals in the Office of the Secretary who have been appointed by the President, by and with the advice and consent of the Senate." 43 U.S.C. § 1714(a). While the State's specific allegations in Claim 1 are not entirely clear, it appears that the State contends that Defendants violated FLPMA § 204(a) when Ms. Daniel-Davis "extended" the withdrawals referenced in PLO No. 7899 by "extending" the opening order of PLO No. 7899 (*see* Compl. ¶¶ 137, 138), and "extended" or "modified" the withdrawals referenced in PLO Nos. 7900, 7901, 7902, and 7903 by "extending" or "modifying" the publication of these PLOs (*see* Compl. ¶¶ 139, 140). This contention ignores the difference between extending a "withdrawal," as contemplated by FLPMA § 204(a), and deferring either an opening order in a published PLO or the

publication of a signed PLO. Nothing in FLPMA § 204 restricts the ability of Ms. Daniel-Davis or the Department to defer the opening order of a PLO revoking prior withdrawals or to defer the publication of signed PLOs revoking prior withdrawals. And the State points to no other law, and Defendants have found none, which restricts the Department in this way.

Defendants acknowledge that PLO No. 7899 was published and states that it became effective on, January 19, 2021. 86 Fed. Reg. 5236-01, 5236 (Jan. 19, 2021) ("This Public Land Order takes effect on January 19, 2021.") ("PLO No. 7899"). Defendants likewise do not dispute that it incorporated an opening order specifying that the lands would open on February 18, 2021. *See* PLO No. 7899, 86 Fed. Reg. at 5245; *see also* 43 C.F.R. § 2091.6 (providing that an opening order specify the "time, date and specific conditions under which the lands are opened"). And it is true that the Department "extended" the *opening order* in PLO No. 7899 by deferring the date on which the lands would open to appropriation. *See* Extension of the Opening Order in PLO No. 7899, 86 Fed. Reg. 10,131-02 (Feb. 18, 2021) (deferring opening order for PLO No. 7899 by sixty days); Extension of the Opening Order in PLO No. 7899 and Addressing Pending PLO's in Alaska, 86 Fed. Reg. 20,193-01 (Apr. 16, 2021) (deferring opening order for PLO No. 7899 for up to two years) ("Extension Order"). But it does not follow that the Department "extended" a "withdrawal" within the meaning of FLPMA because neither PLO No. 7899 nor its incorporated opening order are "withdrawals" in their own right. Rather, PLO 7899 would *revoke* the withdrawals it cites, and its opening order determines when

those lands would become open as a result. *See* 43 C.F.R. 2091.6 (distinguishing between revocation of the withdrawal and opening of the lands).

Moreover, the withdrawals that were revoked by PLO No. 7899 were not capable of being "extended" because they were indefinite withdrawals. *See* Defs.' Mot. to Dismiss at 32-36 (Sec. IV.A), ECF No. 12 ("Defs.' Mot."). The State questions how the terms "modify" or "revoke" in § 204(a) can apply equally to time-limited and indefinite withdrawals, while the term "extend" can only apply to time-limited withdrawals. Pl.'s Resp. in Opp'n to Mot. to Dismiss at 20-21, ECF No. 17 ("Pl.'s Resp."). In addition to the reasons outlined in Defendants' Motion, the State's question is answered by the plain meaning of each term. The term "revoke" clearly refers to the termination of a withdrawal. *See* 43 C.F.R. § 2091.6 ("The term of a withdrawal ends upon expiration under its own terms, or upon revocation or termination by the Secretary"). The term "modify," while not explicitly defined in the statute, implicitly relates to altering the substance of a withdrawal. *See* 43 CFR § 2300.0-5(o) ("Modify or modification does not include, for the purposes of section 204 of the Act (43 U.S.C. 1714), the addition of lands to an existing withdrawal or the partial revocation of a withdrawal."). The term "extend," however, is temporal; extending a withdrawal prolongs its existence by changing the expiration date of the withdrawal to a later point in time. *See New Mexico v. Watkins*, 969 F.2d 1122, 1136 (D.C. Cir. 1992) (per curiam) (distinguishing between *extending* the expiration date of a withdrawal and *modifying* a withdrawal to incorporate new purposes). And an indefinite withdrawal cannot be extended because *it has no expiration date*; as math and logic dictate, time cannot be added to an indefinite period.

Accordingly, the term "extend," as used in various subsections of FLPMA § 204, can only apply to time-limited withdrawals, and no such withdrawals are implicated in this case.

Finally, with regard to unpublished PLO Nos. 7900, 7901, 7902, and 7903, the State argues that "a non-confirmed agency official does not have the authority to withhold the publication of validly executed withdrawal revocations made by a Cabinet-level official," and that "[t]o allow Ms. Daniel-Davis to effectively veto the decisions of a properly sitting Secretary of Interior [sic] has no basis in law." Pl.'s Resp. at 19-20. These arguments are red herrings. First, because PLOs that revoke withdrawals cannot become effective without being published in the Federal Register, there were no effective "decisions" made by the prior Secretary for the Department to veto, with respect to the unpublished PLOs. *See* 43 C.F.R. § 2091.6 ("The term of a withdrawal ends upon expiration under its own terms, or upon revocation or termination by the Secretary *by publication in the Federal Register* of a Public Land Order." (emphasis added)); *see, e.g.*, PLO No. 7900, Compl. Ex. B at 1, ECF No.1-2 ("This Public Land Order takes effect on [INSERT DATE OF PUBLICATION IN THE *FEDERAL REGISTER*]." (alteration in the original))[1]. Second, even if "decisions" had been made, no "decisions" by a Secretary have been "vetoed"; rather, the Department (under the supervision of the current Secretary) has merely deferred the publication of the unpublished PLOs by two years to

---

[1] The State acknowledges in its complaint that the draft PLOs, as signed by Secretary Bernhardt, lack an effective date as required by the regulations. *See* Compl. ¶ 8 requesting, "An order from this court compelling BLM to promptly publish in the federal register all five… PLOs with effective dates no later than 30 days after publication."

ensure that they comply with the law. And third, there is indeed a basis in law for pulling

back an unpublished Department decision, even after it has been submitted to the Office

of Federal Register for publication. *See Chen v. I.N.S.*, 95 F.3d 801, 805 (9th Cir. 1996)

(holding that a midnight regulation that was submitted to the Office of Federal Register

but withdrawn before publication did not have the force of law); *Kennecott Utah Copper

Corp. v. U.S. Dep't of the Interior*, 88 F.3d 1191, 1200-01, 1205-06 (D.C. Cir. 1996)

(holding that a midnight regulation, which was submitted for publication the day before

Inauguration Day and withdrawn two days later at the request of "an Interior employee,

at the direction of the new acting Assistant Secretary for Policy, Management and

Budget," was properly withdrawn); *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 474

F. Supp. 3d 320, 335 (D.D.C. 2020) (holding that a regulation that was withdrawn after

the Office of Federal Register commenced the public inspection period but before it

published the regulation in the Federal Register never went into effect), *appeal filed,* No.

20-5291 (D.C. Cir. Sept. 24, 2020).

Accordingly, the State has failed to state a claim upon which relief can be granted

with respect to Claim 1.

## II.     FLPMA and ANILCA procedures for withdrawing more than 5,000 acres of land do not apply to the Department's actions in this case.

The State argues in its second and third claims that the Department failed to follow

procedures for making large-tract withdrawals outlined in FLPMA § 204(c) and

ANILCA § 1326. These claims presume that the acts of extending the opening order of

PLO No. 7899 and deferring the publication of PLO Nos. 7900, 7901, 7902, and 7903

establish new withdrawals. For the reasons outlined in Defendants' Motion Section IV.B-C and below, these actions do not make new withdrawals.

First, PLO Nos. 7900, 7901, 7902, and 7903 were never published and never became effective; therefore the withdrawals covered by those PLOs were never revoked and remain in place today. *See* 43 C.F.R. § 2091.6; PLO No. 7900, Compl. Ex. B at 1, ECF No.1-2. As a result, deferring publication of these PLOs did not create a new withdrawal of land exceeding 5,000 acres, and FLPMA § 204(c) and ANILCA § 1326 do not apply.

Similarly with regard to PLO No. 7899, extending the opening order of this revocation PLO does not make a new withdrawal. Rather, as 43 C.F.R. § 2091.6 makes clear—as explained above—there is a difference between revoking a withdrawal and opening the lands subject to a revoked withdrawal. 43 C.F.R. § 2091.6 ("Lands included in a withdrawal that is revoked . . . do not automatically become open, but are opened through publication in the Federal Register of an opening order . . . [which] specifies the time, date and specific conditions under which the lands are opened."). Thus, the action of deferring the date on which the subject lands become open to the public land laws did not "make" a new withdrawal of land exceeding 5,000 acres, and FLPMA § 204(c) and ANILCA § 1326 do not apply.

The State insists that because PLO No. 7899 was published in the Federal Register, the Section 17(d)(1) withdrawals referenced in that PLO "have been revoked and no longer exist," and "[t]hus, the 'extension' of the opening order for two years so that Defendants may consider what, if any, lands should be opened is effectively a new

withdrawal." Pl.'s Resp. at 23. But by the State's own logic, the fact that PLO No. 7899 contains an opening order that deferred the opening of lands to one month after the publication date—the date the State alleges the withdrawals were revoked—would have itself created a new withdrawal, and would be likewise invalid under the State's own theory. In other words, if Secretary Bernhardt "made" a withdrawal, he would have been required to follow the multi-step process prescribed in 43 C.F.R. §§ 2300-2310, which did not happen. This absurd result should be rejected. Second, even if the revocation of the withdrawals in PLO No. 7899 became effective upon publication, this fact does not restrict the Department from ensuring that it follows the procedures required of it under the law before allowing the lands at issue to open. Nor does it restrict the current Secretary of the Interior from revisiting PLO No. 7899 to correct errors. *See Boesche v. Udall*, 373 U.S. 472, 476-77 (1963) (recognizing that the Secretary's "general powers of management over the public lands" empower her to reconsider a land management decision); *see also West v. Standard Oil Co.*, 278 U.S. 200, 210 (1929) ("[S]o long as the Department retains jurisdiction of the land, administrative orders concerning it are subject to revision."); *Ideal Basic Indus., Inc. v. Morton*, 542 F.2d 1364, 1367-1368 (9th Cir. 1976) ("Recognition of the [Department's] power to reconsider under the circumstances of this case is consistent with the fact that . . . the Secretary of [the] Interior has broad plenary powers over the disposition of public lands . . . and he is not estopped by the principles of res judicata or finality of administrative action from correcting or reversing an erroneous decision by his subordinates or predecessors in interest." (citations omitted)).

Regardless, the Department has not yet made any decision to revise PLO No. 7899, which speaks to why this action is not ripe for review, as discussed in Section IV *infra*. Accordingly, the State has failed to state a claim upon which relief can be granted with respect to Claims 2 and 3.

**III.    The publication of PLO Nos. 7900-7903 is not a ministerial action.**

The Department incorporates by reference from its Motion its arguments regarding why the Department is under no duty to publish PLO Nos. 7900-7903. *See* Defs.' Mot. at 12-22 (Sec. I). The two cases that the State relies on for the proposition that publishing a signed order in the Federal Register is always a ministerial act are inapposite. *See* Pl.'s Resp. at 25-26. In both cases, a statute specifically required the agency to publish the document at issue in the Federal Register. *See Timken Co. v. U.S.*, 715 F. Supp. 373, 447 (Ct. Int'l Trade 1989), *order aff'd*, 893 F.2d 337 (Fed. Cir. 1990) (statute requiring that "[s]uch notice of the court decision *shall be published* within ten days from the date of the issuance of the court decision." (emphasis added)); *Comanche Nation, Okla. v. United States*, 393 F. Supp. 2d 1196, 1209 (W.D. Okla. 2005) (statute requiring that "[t]he Secretary *shall publish in the Federal Register* notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph." (citing 25 U.S.C. § 2710(d)(8)(D) (emphasis added))).

No such explicit mandate appears in 43 C.F.R. § 2091.6 requiring the Department to publish a public land order that would revoke a withdrawal once the order has been signed; to the contrary, § 2091.6 indicates that the discretionary process of deciding whether to revoke a withdrawal does not conclude until the order is published. *See*

§ 2091.6 ("The term of a withdrawal ends upon expiration under its own terms, or upon revocation or termination by the Secretary by publication in the Federal Register of a Public Land Order."). And the State does not identify any other statutory or regulatory authority that might impose such a duty in this case.[2]

Here, the State points to no statutory or regulatory basis for its contention that the Department has a mandatory duty to publish the PLOs, and the cases the State relies on support the Department's argument that, in this case, there is no such duty. Therefore, the State fails to state a claim upon which relief can be granted with respect to claims 4 and 5.[3]

## IV. Claims 1-3 and 6-10 challenge non-final agency actions and are not ripe for review.

The Department incorporates by reference from its Motion its arguments regarding why the actions challenged in Claims 1-3 and 6-10 are not final agency actions and are

---

[2] But even if such an explicit duty could be found in Section 2091.6, *Comanche Nation* would undermine—not support—the State's arguments here, because the court in that case found "no time limit [in the statute] for performing that statutorily mandated act," and it concluded on that basis that the publication could be delayed without running afoul of the statute. 393 F. Supp. 2d at 1209.

[3] The State argues the merits of the unreasonable delay claims at Pl.'s Resp. 27-29, but these arguments are premature, because if the Court agrees with the United States that no duty to publish exists here, the Court will not need to reach the question of whether any delay was unreasonable. *In re A Cmty. Voice*, 878 F.3d 779, 784 (9th Cir. 2017) ("Of course, an agency cannot unreasonably delay that which it is not required to do . . ."). To the extent that the Court may ultimately conclude that a duty to publish exists, the reasonableness of any delay in publishing the PLOs (Claim 5) will need to be addressed on the merits, based on the administrative record covering these actions. Defendants reserve the right to present all available defenses to those arguments at that time.

not ripe for review. *See* Defs.' Mot. at 22-31 (Sec. II).[4] An agency action is final if it "marks the consummation of the agency's decisionmaking process"—i.e., it is not of a "merely tentative or interlocutory nature"—and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted). Because finality is a jurisdictional requirement to obtaining judicial review under the APA, if no finality is found, the court need not reach the issue of ripeness. *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 591 (9th Cir. 2008).[5]

The State claims that the action of deferring PLO Nos. 7899-7903 "marked the consummation of a decision-making process," but its only apparent support for this contention is that "BLM made the decision to delay the implementation of PLO Nos. 7899-7903." Pl.'s Resp. at 30-31.[6] The State's *ipse dixit* is not enough, as it is well settled

---

[4] In the Department's initial Motion, it incorporated by reference its 12(b)(1) arguments outlined in Section II (discussing Claims 6-10) into Section IV (discussing Claims 1-3).

[5] The State incorrectly asserts that "even if this Court finds final agency action lacking, the inquiry does not end" and the court must consider if the issue is ripe for review. *See* Pl.'s Resp. at 31.

[6] In the same sentence, the State notes that BLM may yet "possibly reverse the decisions of a then-sitting Secretary of Interior." *Id.* at 30-31. The State thus illustrates that the challenged action is not the consummation of the agency's decision-making process because a final decision on any revocation of these withdrawals has yet to be reached. *See DRG Funding Corp. v. Sec'y of Housing and Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (finding an agency order non-final that "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action" (citation omitted)); *see also Bakersfield City School Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir.1979) ("Judicial intervention in uncompleted administrative proceedings, absent a statutory mandate is strongly disfavored."); *Sierra Club v. U.S. Nuclear Regulatory Comm'n*, 825 F.2d 1356, 1362 (9th Cir. 1987) ("We will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary").

that an agency's choice to continue a decision-making process is not itself a final action within the meaning of 5 U.S.C. § 704. *See* § 704 (distinguishing between "final agency action" and "preliminary, procedural, or intermediate agency action"). For example, in *Center for Environmental Health v. Wheeler*, environmental plaintiffs challenged the EPA's decision to extend the interagency consultation period under the Endangered Species Act. 429 F. Supp. 3d 702, 714 (N.D. Cal. 2019). The court first noted that "Plaintiffs provide no authority, and the Court finds none, to support the proposition that an agency's extension of its decision-making process itself constitutes final agency action." *Id*. The court then held that because "the decision to extend the consultation period is predicated on Defendants' assessment that additional data is required . . . [t]he extension is thus intertwined with the consultation itself and does not mark the consummation of the decision-making process." *Id*. Here, the Department's extension of the opening order for PLO No. 7899 and deferral of publication of PLO Nos. 7900-7903 is predicated on the Department's assessment that additional analysis and consultation is required. *See* Extension Order, 86 Fed. Reg. at 20,193 ("During the two-year period after publication of this Federal Register Notice, the BLM will address comments, undertake additional analysis, complete necessary consultation, and correct defects in the PLOs."). Thus, the deferrals are "intertwined" with the decisions to revoke the Section 17(d)(1) withdrawals in the first place and do not mark the consummation of the decision-making process. *Ctr. for Env't Health*, 429 F. Supp. 3d at 714. Accordingly, the deferrals are not final agency actions, and the Court should dismiss Claims 1-3 and 6-10 for lack of jurisdiction.

The State's first through third and sixth through tenth claims should also be dismissed because they are unripe. In deciding whether an agency's decision is ripe for judicial review, the court "must consider: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). In discussing the hardship prong of the ripeness analysis, the State contends that the Department has "unilaterally diminished" . . . "[t]he rights granted to the State in the Statehood Act" . . . "by refusing to revoke obsolete land withdrawals that needlessly frustrate the land selection and conveyance process." Pl.'s Resp. at 34. However, the State alleges no specific hardship that would arise from a two-year delay in judicial review of that decision. In other words, the State has not alleged that delayed review would "create adverse effects of a strictly legal kind," inflict "significant practical harm," or force it "to modify its behavior in order to avoid future adverse consequences." *See Ohio Forestry Ass'n, Inc.*, 523 U.S. at 733-34.[7] "In short,

---

[7] It is also clear from the Complaint that the State's only real allegation of harm stems from the fact that these withdrawals have not been revoked in general. *See, e.g.*, Compl. ¶¶ 1-4 (repeating the complaint that "the State and its citizens still have not received the full benefit of the lands promised" under the Statehood Act); *id*. ¶ 5 ("[D]ue to agency inaction, many of [ANCSA Section 17(d)(1) withdrawals] remain in place to this day, needlessly encumbering federal lands and preventing the conveyance of selected lands to the State"); *id*. ¶ 169 ("[W]hen put into context, the two-year delay is merely the continuation of a decades-long history of unreasonable delays"); *id*. ¶¶ 170-72 (repeating claim that "millions of acres of ANCSA Section 17(d)(1) withdrawals remain"); *id*. ¶ 174 ("[T]his pattern of delay is patently unreasonable").

[the State] has failed to demonstrate that deferring judicial review will result in real hardship." *Nat'l Park Hosp. Ass'n v. Dep't the of Interior*, 538 U.S. 803, 811–12 (2003).

The Reed Declaration, moreover, demonstrates that the State is not, in fact, suffering the harm it alleges. *See* Decl. of Erika L. Reed, ECF No. 12-1 ("Reed Decl."). For example, contrary to the State's claim that the Department's actions or inactions have "needlessly frustrate[d] the land selection and conveyance process," Pl.'s Resp. at 34, the State is at liberty to request conveyance *today* of any portion of "the approximately 5.2 million acres left in the State's allotment under the Statehood Act from any of the approximately 13 million acres of land it has existing selections on," including from the "approximately 6.5 million acres" of lands that are affected by the Section 17(d)(1) withdrawals at issue in this litigation but that are nonetheless available for conveyance. *See* Defs.' Mot. at 27 (citing Reed Decl. ¶¶ 8, 9, 12, 16). And while the State contends that the PLOs, if they entered into effect, "would make available nearly 28 million acres of BLM lands to satisfy longstanding land entitlements owed to the State of Alaska," Compl. ¶ 128, in reality, only 266,000 acres of land would be added to the State's 13 million-acre stockpile of effective selections if the land withdrawals at issue were revoked. *See* Defs.' Mot. at 5 (citing Reed Decl. ¶¶ 17, 18). Moreover, the State has made no effort to explain why these specific 266,000 acres of land are necessary "to satisfy longstanding land entitlements owed to the State of Alaska," as compared to any of the 13 million acres of land on which the State already has effective selections.

Finally, the State is wrong to argue that Defendants present only a facial challenge to jurisdiction, and that the Court should disregard the Reed Declaration on that basis.

While a court must confine its review to the complaint and construe all facts in the non-movant's favor when faced with a facial jurisdictional attack, it can consider evidence and resolve factual disputes when faced with a factual Rule 12(b)(1) motion. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir.2003). A factual attack occurs when "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2.

Here, the Reed Declaration provides facts relevant to the ripeness inquiry, and refutes the State's contention that it suffers hardship from the delay in the withdrawal revocations. Because these facts are dispositive of the jurisdictional issues before the Court, there is no merit to the State's contention that Defendants motion to dismiss presents only facial jurisdictional challenges. And, because the State failed to rebut these facts with any affidavit of its own, it has waived each issue of disputed fact addressed in the Reed Declaration. *See id.*

Thus, for the reasons explained above and in the Department's Motion, the State fails to challenge a final agency action and its claims are not ripe for review. Accordingly, these claims should be dismissed for lack of jurisdiction.

**V.      The State's seventh cause of action fails to state a claim upon which relief can be granted.**

The Department incorporates by reference from its Motion its arguments regarding why the State's seventh cause of action fails to state a claim. *See* Defs.' Mot. at 28-31 (Sec. III). Under section 204(i) of FLPMA, the Department is required to obtain consent from the Department of Defense ("DOD") before revoking withdrawals on lands under the administration of the DOD. 43 U.S.C. § 1714(i). The State concedes that at least two of the PLOs at issue include lands administered by the DOD. *See* Pl.'s Resp. at 38. Therefore, the Department reasonably relied on section 204(i) as a basis for deferring its decisions regarding these PLOs.

The State proposes that "[i]f these consultations are found to be necessary, this Court should craft the remedy to exclude the offending 1,066.6 acres from operation of PLO Nos. 7899 and 7902, and allow the withdrawal revocations to proceed on the remaining 23.099 million acres." *Id*. at 39. The State's position is illogical and appears to misunderstand its own complaint, which obviously does not challenge PLO Nos. 7899 and 7902. Whatever the remedy for a hypothetical challenge to those PLOs might be, it is irrelevant to the question of the Department's power to correct those errors. Moreover, the State's suggestion that this Court take pen to paper to revise the PLOs does not comport with fundamental principles of administrative law. Because the agency has identified an error in the decision-making process, and is in the process of correcting it, the proper course for the Court would be to allow the agency to complete that process in the first instance, rather than taking it upon itself to complete that administrative function.

*See Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408–09 (9th Cir. 1996) ("Having two bodies simultaneously review an agency action wastes scarce governmental resources. . . . Allowing judicial review in the middle of the agency review process unjustifiably interferes with the agency's right to consider and possibly change its position during its administrative proceedings." (internal citation omitted)); *see also Boesche*, 373 U.S. at 483-84 (holding that matters related to the correction of defective public lands decisions are "peculiarly appropriate… for administrative determination in the first instance" and "do not warrant initial submission to the judicial process"). Allowing Interior to complete its administrative process in the first instance is also consistent with the limited nature of judicial review under the APA, whereby even when a court finds a challenged agency action was arbitrary and capricious, the appropriate remedy is to remand to the agency so that it may correct its error. *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) ("[R]emand, along with vacatur, is the presumptively appropriate remedy for a violation of the APA"). Therefore, the State's seventh cause of action fails to state a claim and should be dismissed.

As to the State's remaining arguments regarding claims 6, 8, 9, and 10, those arguments are not yet properly before the Court. Should the Court deny the motion to dismiss those claims, the Department reserves the right to address them on the merits after an administrative record is lodged.

DATED:  January 14, 2022.

TODD KIM
Assistant Attorney General

United States Department of Justice
Environment and Natural Resources Div.

*/s/ Shannon Boylan*
SHANNON BOYLAN (D.C. Bar No. 1724269)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
202-598-9584
202-305-0506 (fax)
shannon.boylan@usdoj.gov

*Counsel for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because this memorandum contains 5,121 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in a proportionately spaced typeface, Times New Roman 13-point font, and I obtained the word count using Microsoft Word 2016 (16.0.5161.1000) MSO (16.0.5173.1000) 32-bit.

  */s/ Shannon Boylan*
SHANNON BOYLAN

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2022, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

  */s/ Shannon Boylan*
SHANNON BOYLAN