UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

Plaintiff

v.

DEB HAALAND, in her capacity as
Secretary of the Department of the Interior;
LAURA DANIEL-DAVIS, in her capacity
as Principal Deputy Assistant Secretary,
Land and Minerals Management, Bureau of
Land Management; CHAD PADGETT, in
his capacity as Alaska State Director,
Bureau of Land Management; and
BUREAU OF LAND MANAGEMENT,

Defendants.

No. 3:21-cv-0158-HRH

STIPULATED SETTLEMENT AGREEMENT

Plaintiff State of Alaska, by and through its undersigned counsel ("Plaintiff"), and Defendants Debra Haaland, in her official capacity as Secretary of the Interior; Laura Daniel-Davis, in her capacity as Principal Deputy Assistant Secretary, Land and Minerals Management, U.S. Department of the Interior; Steven Cohn, in his capacity as Alaska State Director, Bureau of Land Management; and the Bureau of Land Management ("BLM"), by and through undersigned counsel ("Defendants," and together with Plaintiffs, "the Parties"), hereby stipulate and agree as follows:

WHEREAS, between January 11 and January 16, 2021, then-Secretary of the Interior David Bernhardt signed five Public Land Orders, known as PLOs 7899, 7900, 7901, 7902, and 7903 ("PLOs"), intended to partially revoke withdrawals issued in 1972 and 1973 by the Department of the Interior pursuant to Executive Order 10355 and Sec. 17(d)(1) of the Alaska Native Claims Settlement Act (ANCSA) on nearly 28 million acres of BLM-administered lands in Alaska;

WHEREAS, on January 19, 2021, PLO 7899 was published in the Federal Register, 86 Fed. Reg. 5236 (January 19, 2021);

1

Attachment 1
Page 1 of 12

WHEREAS, PLOs 7900, 7901, 7902, and 7903 have not been published in the Federal Register;

WHEREAS, on February 18, 2021, Defendants published a notice in the Federal Register extending the opening order for PLO 7899 and providing that the lands subject to that PLO will not be opened for an additional 60 days, 86 Fed. Reg. 10,131 (February 18, 2021) ("the February 18, 2021, Notice");

WHEREAS, on April 16, 2021, Defendants published a notice in the Federal Register further extending the opening order for PLO 7899 and providing that the lands subject to that PLO will not be opened until April 16, 2023, and clarifying that the BLM has not published opening orders for PLOs 7900, 7901, 7902, and 7903 and therefore they have no effective date, 86 Fed. Reg. 20,193 (Apr. 16, 2021) ("the April 16, 2021, Notice");

WHEREAS, on July 7, 2021, Plaintiff filed the above-captioned actions against Defendants in the U.S. District Court for the District of Alaska (ECF No. 1), alleging that the extensions of the opening order for PLO 7899 and the Defendants' delay in publishing opening orders for the remaining PLOs were unlawful;

WHEREAS, on October 22, 2021, Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(l) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(6)(6) (ECF No. 12);

WHEREAS, on March 14, 2022, the District Court granted Defendants' motion to dismiss and dismissed Plaintiffs complaint without prejudice (ECF No. 20);

WHEREAS, on May 12, 2022, Plaintiff filed a notice of appeal with the U.S. Court of Appeals for the Ninth Circuit (ECF No. 21);

WHEREAS, on August 18, 2022, Defendants published in the Federal Register a Notice of Intent To Prepare an Environmental Impact Statement To Consider the Impacts of Opening Lands Subject to ANCSA 17(d)(1) Withdrawals, Including Lands Within the Bay, Bering Sea-Western Interior, East Alaska, Kobuk-Seward Peninsula, and Ring of Fire Planning Areas; Alaska, 87 Fed. Reg. 50875 (August 18, 2022) ("the August 18, 2022 NOi");

WHEREAS, on April 10, 2023, Defendants published in the Federal Register a Notice extending the opening order for Public Land Order No. 7899 until August 31, 2024 and clarifying that the BLM has not published opening orders for PLOs 7900, 7901, 7902, and 7903, 88 Fed. Reg. 21207 (April 10, 2023) ("the April 10, 2023 Notice");

NOW, THEREFORE, the Parties hereby stipulate and agree as follows:

## A. Effective Date of the Agreement

1. The terms of this Agreement shall become effective upon entry of an Order by the District Court approving the Agreement.

### B. Completion of Decision on Lands Subject to the PLOs

1. Defendants agree, on or before August 31, 2024, to complete the analyses initiated through the August 18, 2022 NOI, including any related analyses required by Federal law, and to issue one or more decisions regarding whether or not to revoke withdrawals on the approximately 28-million acres of BLM-administered lands subject to the PLOs. Defendants may unilaterally extend this deadline by up to four months if Defendants determine that, despite good-faith efforts, they are unable to complete the decision-making process by that date and explain to the Plaintiffs, in writing, the basis of their determination.

2. The Parties acknowledge that nothing in this Agreement limits or otherwise affects Defendants' discretion in issuing a decision to revoke, not revoke, or partially revoke any withdrawals on the lands identified in paragraph B.1 or on any other lands.

3. The Parties acknowledge that nothing in this Agreement limits Plaintiff's right to challenge Defendants' subsequent decision to revoke, not revoke, or partially revoke any withdrawals in a separate administrative or judicial action in the future; nor does this Agreement limit Defendants' defenses to any such challenge.

### C. Dismissal of Appeal and Forbearance from Filing Amended Complaint

1. Within seven days of the execution of this Settlement Agreement, Plaintiff shall file with the Ninth Circuit Court of Appeals a stipulation in substantially the form set forth in Exhibit A to this Settlement Agreement, requesting that the appeal be dismissed so that jurisdiction may re-vest in the District Court to approve the referenced settlement agreement. Within 14 days following dismissal of the appeal, the parties will file in the district court a joint motion (in substantially the form set forth in Exhibit B to this Settlement Agreement) requesting that the district court approve the settlement agreement and retain jurisdiction solely to oversee compliance with the commitments set forth in this Settlement Agreement. As set forth in Exhibit A, the Parties agree that in the event the district court fails to approve the settlement agreement, Plaintiff may file an unopposed motion to reinstate the appeal within 28 days of any district court order denying approval of the settlement agreement.

2. Plaintiff further agrees to forbear from filing an amended complaint or take any additional steps to pursue litigation in this matter in the District Court, or to initiate or pursue any other litigation arising from the February 18, April 16, 2021, or April 10, 2023 Notices, or any future similar notices or extensions of the opening order, consistent with the provisions of this agreement, until after the date set forth in Paragraph B.1 of this Settlement Agreement, including any extension allowed under Paragraph B.1.

3. Plaintiff further agrees that if Defendants issue one or more decisions regarding whether or not to revoke withdrawals on the approximately 28-million acres of BLM-administered lands subject to the PLOs by the date set forth in Paragraph B.1 of this Settlement Agreement, including any extension allowed under Paragraph B.1, this litigation will be deemed as having been dismissed with prejudice.

4. The Parties request that the District Court transfer this litigation to its inactive docket and retain jurisdiction solely to oversee compliance with the commitments set forth in this Settlement Agreement.

**D. Additional Terms**

1. Each party shall bear its own fees and costs arising from this litigation, whether before or after the date of this Settlement Agreement.

2. In the event of a dispute arising out of, or relating to this Agreement, or if any of the Parties believes another party has breached its obligations under this Agreement, the Party raising the dispute or alleging breach shall provide the other Parties written notice and a reasonable opportunity to resolve the dispute or cure the alleged breach. The Parties agree that they will meet and confer (either telephonically or in person) within 30 days of being notified of a dispute in a good faith effort to resolve any disputes or alleged breaches. The parties agree that contempt of court is not available as a remedy the parties may seek for any alleged violation of any portion of this Agreement. The parties therefore knowingly waive any right that they might have to seek an order for contempt for any such violation.

3. Nothing in this Agreement shall be construed or offered as evidence in any proceeding as an admission or concession of any wrongdoing, liability, or any issue of fact or law concerning any matter, except as set forth expressly in this agreement. Except as expressly provided in this Agreement, none of the parties waives or relinquishes any legal rights, claims, or defenses it may have.

4. No part of this Agreement shall have precedential value in any litigation or in representations before any court or forum or in any public setting. This Agreement is executed for the purpose of settling Plaintiffs appeal, and nothing herein shall be construed as precedent having preclusive effect in any other context.

5. The Parties agree that this Agreement was negotiated in good faith and that it constitutes a settlement of claims that were disputed by the Parties. This Agreement contains all the terms of agreement between the Parties, and is intended to be the final and sole agreement between the Parties. The Parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

4

6. Nothing in this Settlement Agreement shall be construed to make any other person or entity not executing this Settlement Agreement a third-party beneficiary to this Settlement Agreement.

7. This Settlement Agreement in no way affects the rights of any party as against any person or entity not a party hereto. Nothing in this Settlement Agreement shall be interpreted as imposing obligations on any federal agency or other non-federal entity that is not a signatory to this Settlement Agreement.

8. The obligations imposed upon Defendants under this Settlement Agreement can be undertaken only using appropriated funds. No provision of this Settlement Agreement shall be interpreted: (1) to commit a federal official to obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other law; (2) to deprive a federal official of the authority to revise, amend, or promulgate regulations; or (3) to require a party to take any action contrary to any law or regulation.

9. The provisions of this Settlement Agreement shall apply to and be binding upon each of the parties.

10. Any subsequent modifications, supplements, or amendments to this Settlement Agreement must be in writing, and must be signed and executed by or on behalf of the affected parties, or their successors in interest, as necessary.

11. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein. Further, each party, by and through its undersigned representative, represents and warrants that it has the legal power and authority to enter into this Agreement and bind itself to the terms and conditions contained in this Agreement.

May 30, 2023

TREG TAYLOR
ATTORNEY GENERAL

By: _____
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Kimberly D. Rodgers (Alaska Bar No. 0605024)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834

5

Email: ron.opsahl@alaska.gov
kimber.rodgers@alaska.gov

Attorney for Plaintiff


By: /s/ Andrew M. Bernie                  May 25, 2023
Andrew M. Bernie
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Avenue NW
Washington, DC 20530
Phone: (202) 514-4010
Andrew.m.bernie@usdoj.gov

Attorney for Defendants

EXHIBIT A TO SETTLEMENT AGREEMENT

No. 22-35376

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**STATE OF ALASKA,**
*Plaintiff/Appellant,*

v.

DEB HAALAND, in her capacity as
Secretary of the Department of the Interior;
LAURA DANLEL-DAVJS, in her capacity
as Principal Deputy Assistant Secretary,
Land and Minerals Management, Bureau of
Land Mana ement; CHAD PADGETT, in
his capacity as Alaska State Director,
Bureau of Land Management; and
BUREAU OF LAND MANAGEMENT,
*Defendants/Appellees,*

Appeal from the United States District Court for the District of Alaska
No. 3:21-cv-0158-HRH

**STIPULATION TO DISMISS
APPEAL WITHOUT
PREJUDICE**

The parties, having reached a settlement of the present matter, hereby stipulate that the appeal be dismissed so that jurisdiction may re-vest in the District Court to approve the referenced settlement. This dismissal shall be without prejudice to any party's reinstating the appeal within twenty eight (28) days of the District Court's Order denying approval of said settlement.

[SIGNATURE BLOCKS]

EXHIBIT B TO SETTLEMENT AGREEMENT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br>Plaintiff,<br>v.<br><br>DEB HAALAND, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 3:21-cv-00158-HRH<br>)<br>)<br>)<br>) |

**JOINT MOTION FOR APPROVAL OF STIPULATED SETTLEMENT AGREEMENT**

In accordance with the stipulated settlement agreement ("Agreement") reached in this matter (*see* Attachment 1 to this Motion), Plaintiff the State of Alaska ("Plaintiff") and Defendants Deb Haaland et al. ("United States" or "Defendants") (collectively the "Parties") respectfully request that this Court issue an order approving the Agreement and retaining jurisdiction solely to enforce the terms of the Agreement. In support of this motion, the Parties state as follows:

1. Between January 11 and January 16, 2021, then-Secretary of the Interior David Bernhardt signed five Public Land Orders, known as PLOs 7899, 7900, 7901, 7902, and 7903 ("PLOs"), intended to partially revoke withdrawals issued in 1972 and 1973 by the Department of the Interior pursuant to Executive Order 10355 and Sec. 17(d)(1) of the Alaska Native Claims Settlement Act on nearly 28 million acres of Bureau of Land Management ("BLM")-administered lands in Alaska.

2. On January 19, 2021, PLO 7899 was published in the Federal Register, 86 Fed. Reg. 5236 (January 19, 2021). PLOs 7900, 7901, 7902, and 7903 have not been published in the

Federal Register.

3. On February 18, 2021, Defendants published a notice in the Federal Register extending the opening order for PLO 7899 and providing that the lands subject to that PLO will not be opened for an additional 60 days, 86 Fed. Reg. 10,131 (February 18, 2021).

4. On April 16, 2021, Defendants published a notice in the Federal Register further extending the opening order for PLO 7899 and providing that the lands subject to that PLO will not be opened until April 16, 2023, and clarifying that the BLM has not published opening orders for PLOs 7900, 7901, 7902, and 7903 and therefore they have no effective date, 86 Fed. Reg. 20,193 (Apr. 16, 2021).

5. On July 7, 2021, Plaintiff filed this lawsuit (ECF No. 1), alleging that the extensions of the opening order for PLO 7899 and the Defendants' delay in publishing opening orders for the remaining PLOs were unlawful.

6. On March 14, 2022, this Court granted the United States' motion to dismiss and dismissed Plaintiff's complaint without prejudice (ECF No. 20).

7. On May 12, 2022, Plaintiff filed a notice of appeal with the U.S. Court of Appeals for the Ninth Circuit (ECF No. 21).

8. On April 10, 2023, Defendants published in the Federal Register a Notice extending the opening order for Public Land Order No. 7899 until August 31, 2024 and clarifying that the BLM has not published opening orders for PLOs 7900, 7901, 7902, and 7903, 88 Fed. Reg. 21207 (April 10, 2023).

9. After detailed negotiations between the Parties, the Parties have reached an agreement to resolve this litigation per the attached Agreement.

10. Under the Agreement, the United States agrees "to issue one or more decisions

regarding whether or not to revoke withdrawals on the approximately 28-million acres of BLM-administered lands subject to the PLOs" by August 31, 2024. The United States may unilaterally extend that deadline by up to four months-i.e., until the end of 2024-"if Defendants determine that, despite good-faith efforts, they are unable to complete the decision-making process by that date and explain to the Plaintiffs, in writing, the basis of their determination." In exchange for that commitment, Plaintiff agrees to dismiss its appeal (subject to the possibility of reinstatement, as explained further in the next paragraph).

11. The Agreement contemplates that this Court will retain jurisdiction solely to oversee compliance with the Agreement. If Defendants issue one or more decisions regarding whether to revoke the subject withdrawals by the deadline for doing so-including any permitted extension of that deadline-the litigation will be deemed as having been dismissed with prejudice. The parties agree that in the event this Court declines to approve the agreement, Plaintiff may file an unopposed motion to reinstate the appeal within 28 days of any order denying approval of the settlement agreement.

12. In accordance with the terms of the Agreement, the Parties respectfully request this Court issue an order approving the Agreement, transfer this litigation to its inactive docket, and retain jurisdiction solely for the purpose of adjudicating any motion to enforce the commitments set forth in the Agreement. *See Kokkoken v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 381 (1994).

[SIGNATURE BLOCKS]